Bank of Utica
v.
Childs.

**THE PRESIDENT, DIRECTORS AND COMPANY OF THE BANK OF UTICA** *against* **CHILDS.**

Where a note was endorsed by the holders, to a bank for collection; whose notary negligently omitted to charge a prior endorser by giving notice of non-payment; and the bank was sued by their endorsers for neglect, and compelled to pay damages; in an action of assumpsit against the notary; *held*, that the cause of action arose immediately on the omission; and the bank, not having sued till more than 6 years after, were barred by the statute of limitations. And this, though the former suit, and recovery thereon against, and payment of damages by the bank to the holders, were all within six years of the suit against the notary.

*Held*, also, that the notary not having notice of the former suit, could, in no way be affected by it, even as to the amount of damages.

*Semble*, it would be otherwise as to the mere amount of damages, if he had had notice; but still that he must have been sued within 6 years from his omission.

On demurrer to the plaintiffs' replication. The first count of the declaration stated, that on the 14*th* of *February*, 1818, and for a long time before and after, the defendant was a public notary of this state, &c.; and in consideration of certain reasonable fees and reward, to be paid to him by the plaintiffs, he then undertook and promised to give due notice to *John C. Spencer*, of the non-payment of a certain promissory note, dated *August 12th*, 1817, payable to *Spencer*, or order, 6 months after date, for $1237, with interest, at the *Utica Branch Bank;* endorsed by *Spencer* to *Smedes & Canfield;* and left at the plaintiffs' banking house there for collection, by the holders, (*S. & C.*) on the 10*th* of *February*, 1818; and which was not paid when due, on the 14*th* of *February*, 1818. Yet the defendant did not give notice of the non-payment, nor cause it to be given to *Spencer;* by reason whereof, the plaintiffs had been compelled to pay the holders the amount of the note with interest, and costs of prosecuting and defending a suit in this court, and in the court for the correction of errors.

The 2d count was in substance the same.

The defendant pleaded, 3*dly*, not guilty of all or any of the grievances alleged within 6 years, next before the commencement of the suit.

The plaintiffs replied, that within six years next before this suit was commenced, and on the 1*st* of *January*, 1821, the holders sued the present plaintiffs at law, for the neglect of giving notice as alleged in the declaration, which suit the present plaintiffs defended; that in *January* term, 1823, the holders recovered judgment for $1804,37, which was affirmed by the court for the correction of errors in

1824; and that on the 20*th* day of *May*, 1824, the plaintiffs paid the holders $2206,92, in full of the judgment so affirmed.

General demurrer and joinder.

*S. A. Foot*, in support of the demurrer. The *gravamen* rests on the negligence of the defendant ; not the recovery against the plaintiffs. The history of that recovery will be found in 20 *John.* 372, and 3 *Cowen*, 662. The replication avers the recovery as a consequence of the negligence ; for which negligence an action on the case is brought. The grievance alleged, is the omission to give notice to *Spencer*. This omission is the ground of the action ; and the statute, as pleaded, relates to the time of the omission. The answer given by the replication is, " we have been obliged to pay money by reason of the negligence, a long time after it happened ; and therefore you are guilty within six years." Is not this a very illogical conclusion ? Suppose the holders had not prosecuted the bank within 10 years, and the bank had omitted to interpose the statute of limitations ; would *Childs* be liable over ? Shall he be put in the power of the bank in this way, they paying when they please, and then calling on him ? The bank would be under no obligation to plead the statute. (3 *Cowen*, 330, 1, &c.) Suppose deceit in the sale of a horse ; but the defect concealed does not show itself till six years after the sale. No damage results till that time. Could this be replied in answer to the statute, pleaded to an action brought after the 6 years ? So of a warranty, and a suit against the last vendor, who is thrown in damages, and then sues his vendor, more than six years from the sale to him, but a few days after he has paid the money. Would it be competent to reply the recovery ? The answer that he did not before know of the defect, would not avail the vendee in either the case of the deceit or warranty. ( *Troup* v. *Smith's Exrs.* 20 *John.* 33.) The fraud or breach of warranty was consummate at the sale. ( *Oothout* v. *Thompson*, 20 *John.* 279.) The turn of reasoning in the last case goes to illustrate what we

contend for ; that a distinction should be kept up between torts and their consequences ; that it is the act which must control, and not the consequences which flow from it. In both the cases cited, the actual damages arose within six years of the action ; yet this was not made a point.

The bank had an immediate cause of action on the omission taking place. If so, the statute began to run immediately. (12 *Mod.* 111. 1 *Sid.* 95. *T. Raym.* 61.) A liability to pay damages, was enough to sustain the suit. As between the plaintiffs and defendant, the former were the holders of the note. Suppose a clerk of a county omits to record a deed, by which a title is defeated, must the party injured wait till eviction, before he can sue for damages ; thus running the risk of the death of witnesses and other losses of testimony? The right of action dates from the wrong committed. (*Read* v. *Markle*, 3 *John. Rep.* 523.) This is so of a misfeasance ; (*Com. Dig. Pleader* (2 *O.*) *Cro. Jac.* 255 ;) and the same reason applies to a non-feasance. In *Godin* v. *Ferris*, (2 *H. Bl.* 14,) it was held that custom-house officers must be sued within the three months' limitation, after actual seizure of goods ; though a question upon the condemnation had been, during the whole time, in the exchequer, on a suit there, which was pending at the expiration of the three months. (*Saunders* v. *Saunders*, 2 *East*, 254, *S. P.*)

The former suits cannot affect the defendant. He was not a party to them, nor does it appear that he had notice.

*J. Platt*, contra. When was the right of action complete? Against torts, which, *per se*, give a right of action, as trespass, trover, and slander by words actionable without special damages, we concede that the statute begins to run immediately, on the wrong being committed. But where the injury is consequential, and where the action does not lie immediately, the statute runs only from the time of the injury being complete. This cannot be said till the consequences are unfolded. There must be *damnum et injuria*. In this case, the neglect was *damnum ;* but there was no *injuria*, till the damages fell upon the

plaintiffs. Till this happened, it was entirely contingent whether they would ever sustain any damage. The note might have been recovered of the makers. The endorser might have been indemnified ; and thus notice out of the question ; and he might consequently have been reached in a court of equity. The plaintiffs might have obtained the money in a variety of ways ; or the holders might have sued *Childs* directly, as the sub-agent. By a suit, they might have made him their immediate agent, adopted his acts, and thus have recovered against him. The action upon this very note, reported in 20 *John.* 372, and 3 *Cowen*, 662, regards the relation between them in this light. Where the holders might go, was uncertain. If the bank had paid the money in advance, this would have been in their own wrong, and a good defence to *Childs.* But the payment was by compulsion in its most rigid form. The claim was litigated to the last, and ended in a court of dernier resort.

As to the class of torts which become actionable by reason of consequential damages, the plea of the statute must always say *non accrevit.* (3 *Burr.* 1281. *Bac. Abr. Limitation of Actions,* (D) *pl.* 3. 2 *Salk.* 421, 2. 1 *Saund.* 38, *note* (2). 2 *id.* 63, *note* (6). The commencement of a suit against the plaintiffs, and driving them to incur expenses, was the point of time when the cause of action arose in this case. They were not damnified till the suit was brought against them.

[SUTHERLAND, J. Suppose a potion unskilfully administered by a physician, from which the patient sustains damages.]

*Platt.* If it was a slow poison, and not operative till a year after, the action would not lie till that time. Suppose it administered to your honor's servant, and the consequences are not felt by you till after the year ; you could not maintain your action before that time.

*Childs* served as a deputy of the plaintiffs, and was bound to indemnify them, the same as a deputy sheriff is

UTICA,
Aug. 1826.

Bank of Utica
v.
Childs.

his principal, the sheriff.   A promise of indemnity is im-
plied from *Childs'* relation to the bank.   If so, then *non
damnificatus* would be a proper plea to this action.   It is
the same case as a covenant of simple indemnity.   In the
case supposed of a clerk's omitting to register a deed, I de-
ny that the statute would begin to run at the time of the
omission, or from the time of an eviction; but from the
intermediate time, whenever the party can shew that he
has lost his right.   The omission may, or may not prove
injurious.   The loss is potential, contingent.   In this case,
the holders had a right to sue immediately; but not so
with us.   We were obliged to wait till we saw where they
would go.   As I have shown in the case of the physician,
there is a difference between the right of the servant and
the right of the master.   As to the former, the action may
be brought instantly.   As to the latter, not till the conse-
quences are felt by the master.   In the case of the former,
the act may be injurious *per se;* in the latter, only by con-
sequence.   Suppose a stage driver carelessly overturns
the coach, and breaks a man's arm; the latter has his elec-
tion either to sue the driver, or the proprietors of the line;
but he omits to sue at all for three years: clearly the own-
ers could have no action over, for they have no claim
against the driver for breaking the arm, till damages are
recovered of them, or, at any rate, till they are 'sued and
put to expense.   So here, *Childs,* the servant, was the im-
mediate instrument of the injury; and is answerable on
the same terms.   Suppose seven years ago, one dug a pit
in the high-way; and five years after, a traveller falls into
it, and breaks his leg: clearly he could not sue till the con-
sequential injury happen; and till then there is no right
of action on which the statute can operate.   The misfeas-
ance was complete five years before; but the consequen-
ces are not felt till five years after; and from this time the
statute begins to run.

   We admit that *Childs* is not concluded by the former
recovery.   We had the choice to give him notice, and
make him a party, thereby concluding him; or to defend
without him.   But this does not vary the truth of the case:

though it varies the mode of proof. We were, however, bound to plead the former suits, and the consequent recovery, to complete our right. (3 *Cowen*, 330, 1, &c.) *Ash* v. *Bushnell*, cited on the other side, from *Cro. Jac.* 255, was after verdict. But clearly the declaration would have been held bad, if the defendant had demurred.

While arguing, *Manning's Dig.* has been put into my hands, containing, (*Limitation of Actions*, (*A*) (*a*) *pl.* 2,) the following note of *Compton* v. *Chandless*, (4 *Esp. Rep.* 18,) which I had not seen : " If the statute be pleaded to an action against an attorney for negligence, *semble*, that the six years must be reckoned from the period at which the plaintiff was damnified ; not from the time when the blunder was committed." (*Kenyon*, C. J.) Several cases will be found cited at the end of that note in support of the doctrine from *Espinasse*. (*Peake* v. *Ambler*, *W. Jon.* 329. (*a*)  *Cro. Car.* 349, *S. C. Shutfen* v. *Penow*, ibid. 139. *Hughes* v. *Thomas*, 13 *East*, 474. *Littleboy* v. *Wright*,(*b*) 1 *Lev.* 69. *Hickman* v. *Walker*, *Willes*, 27.)

*Foot*, in reply. The gentleman's illustration by the case of a pit dug seven years ago, is inapposite. The digging does not occasion the injury, but the falling in. The hypothesis of the stage driver is certainly apposite, if followed up with the addition that the owner of the line is a passenger in the stage. Short of this, it is not ; for the proprietors do not own the arm of a stranger passenger. Here, the plaintiffs were the passenger ; or, to drop the simile, they were the holders of the note ; not, as is supposed, the persons who endorsed it for collection. The plaintiffs

(*a*) The 3d *res.* in *Jones*, (330,) is in these words : " If an assumpsit be, and the damnification accrue, not at one time, but parcel at one time, and parcel at several times after, as in this case, he may have entire action after the last time of damnification ; and though parcel of the damnification was before 6 years of the action brought, and parcel within six years, yet the action well lies, notwithstanding the statute of 21 *Jac.*" The action was on a promise of indemnity. The report in *Cro. Car.* 349, by the title of *Peck* v. *Ambler*, does not recite this general resolution in so many words ; but the case is to the same effect.

(*b*) Slander, *per quod*, &c. *Held*, that the statute ran from the time of the special damage, which is the cause of the action.

were treated and considered as the holders in the former suits. The note was protested in their names; and notice should have been given in their names. Their endorsers had no right to an action against *Childs*. But I deny that in the case supposed, of the stage driver, his master's action depends on the suit by the injured party. Suppose he break seven arms of seven different passengers by the accident, may the master wait, and have seven separate actions against his servant at twelve years distance of time, or more, according to the date of the several suits and recoveries against the former?

No decision can be found recognizing the distinction advanced, between pleading the statute in answer to immediate and consequential injuries. There is such a distinction in reference to the nature of the action, as whether it shall be trespass or case; but this is the first time I have heard it applied to the statute of limitations. If it be held in a case of damages remote, the next must be of those more immediate; and thus we may go on to all actions upon the case. In legal language and contemplation, the damages were not contingent in the principal case. If *Childs* was amenable to the endorsers of the bank, and the former had sued him, this would not prevent their suing the bank. But if there was this contingency of election, its consequence is mistaken. The right to demur does not follow; but the gentleman should have taken issue on our plea of the statute, and given the matter in evidence at the trial, or he should have replied this fact specially.

It is admitted that the moment one cent of damages accrued to the plaintiffs, their right of action arose. This admits that the recovery did not give the cause of action; but only determines the amount of damages. A contingency is a matter which no one can control. The case of a promissory note, payable on demand, is stronger than the one put by Lord *Mansfield*, in 3 *Burr.* 1281, and cited against us; yet the statute runs from the date.

In the case put, of the injury to the servant, *per quod servitium amisit*, it is the loss of service, not the injury which gives the right of action to the master.

This is not a technical contract of indemnity, but a promise to do a certain act. When a contract of indemnity is shown, we shall be ready to meet the question of the statute in relation to that. The present is a case of tort, and not of indemnity. It is admitted, as to the case put, of a clerk of the county, who omits to record a deed, a fixed liability to eviction, without eviction itself, is enough to constitute a ground of action. This admission, alone, gives us the cause.

*Curia, per* WOODWORTH, J. (after stating the pleadings.) The question to be decided is, whether the statute of limitations began to run from the time when the note fell due, since which more than six years elapsed before the present suit was commenced ; or from the time of the recovery against the plaintiffs, which was within six years.

It is contended, that the cause of action was not complete until the plaintiffs sustained damages. I apprehend this cannot be the test. On the principle assumed, the defendant's liability might continue indefinitely, when, from the nature of the case, there is no such necessity. He was liable to be prosecuted by the plaintiffs, immediately after his default. He was their agent. In such an action, it is true, a question might be, what damages have the plaintiffs sustained ? That would depend on the insolvency, or probable extent of the insolvency of the makers. To that extent, the plaintiffs were answerable to *Smedes & Canfield*, the holders of the note. The defendant could not object that *Smedes & Canfield* had not recovered of the plaintiffs. It would be a sufficient answer, that they were liable to the same measure of damages claimed from the defendant. To that amount, a loss had arisen, which the defendant ought to pay. He had no concern with the inquiry, whether the holders of the note would or would not, at a future period, call on the plaintiffs for the loss. I consider the cause of action against the defendant, to rest on the default in not giving notice :

and as arising immediately on the happening of that default. And if so, the statute began to run from that time. The case of *Miller* v. *Adams*, (16 *Mass. Rep.* 456,) contains a recognition of the principle. The former brought an action against the latter, a deputy sheriff, for making a defective return to an original writ, sued out against several defendants. The omission was, to return a summons as to two of the defendants ; for which cause, the judgment obtained against them was reversed. *Adams* pleaded the statute of limitations ; upon which the question was, whether it ran from the time when *Miller* was actually damnified by the reversal, or when the return was made ; and held the latter. The court say, the judgment being then liable to reversal, the plaintiff might have immediately brought his action, and would have been entitled to his damages. A like principle will be found in two late cases, decided by the English K. B. (*Battley* v. *Faulkner*, 3 *B. & A.* 288 ; and *Short* v. *M'Carthy, id.* 626.) In the last, the plaintiff, as here, declared in assumpsit ; and stated as a breach, that the defendant did not diligently and sufficiently make search at the bank of *England*, to ascertain whether certain stock was standing in the names of certain persons, the defendant having been employed as an attorney so to do. The omission to search, took place more than six years before action brought. The court held the *omission* to search was the cause of action, from the time of which the statute ran.

The recovery in the former case cannot be the measure of damages, because there is no averment that the defendant had notice ; and consequently, for aught that appears, he had no chance of defending as to the material point. What has been lost by the neglect ? It will scarcely be contended, that if, notwithstanding the omission to charge the endorser, the makers of the note were unquestionably responsible, and of undoubted credit, the holders were entitled to recover the whole amount of the note. The defendant is not to be charged with the amount of the judgment when he has not been heard. If, indeed, the plaintiffs had given notice to the defendant of the suit

commenced against them, and required him to defend, I incline to think he would be concluded as to the damages. But even then, it must appear that the action was commenced against the defendant within six years ; for the right of action was complete the moment after the neglect. If the plaintiffs omitted to prosecute till after a recovery against them, and that was after six years, the remedy would be barred by the statute.

If the view I have taken be correct, it follows that the plaintiffs might have sustained their action, without waiting to be prosecuted, or paying damages to the holders. If, however, it were otherwise, I think payment of the damages by the plaintiffs, without suit, would not have been in their own wrong ; although it would be attended with risk in this respect. If they could not show that the damages sustained by the defendant's default, was equal to the sum paid in satisfaction to the holders, they would incur a loss *pro tanto.* The defendant would be bound to indemnify for the amount paid, provided it did not exceed the injury proved at the trial. Beyond this, he would not be holden. If it be necessary to have paid the damages in the first instance, I do not see how the plaintiffs, under the circumstances in which they were placed, could avoid this risk.

On the argument, this action was likened to the action for an injury to a servant, *per quod servitium amisit ;* and the case of digging a pit in the highway seven years ago, in which the plaintiff's leg was broken five years afterwards, and several like cases. The difference between the two cases mentioned, and the present case, is this: here the damages accrued at the time of the defendant's default. In the cases mentioned, and supposed to be analagous, no damages accrued, (except perhaps nominal in the case of the servant,) until the loss of service took place, or the limb was broken. The same answer may be given to several other cases put upon the argument.

I am of opinion that the defendant is entitled to judgment ; but the plaintiff may amend on payment of costs.

Judgment for the defendant.