CHARLES MARTIN CAMP, as Sole Surviving Executor, etc., of ELLEN P. KELLOGG, Deceased, Respondent, *v.* ALFRED G. REEVES and Others, Individually and as Copartners Doing Business under the Firm Name and Style of REEVES, TODD & SWAIN, Defendants, Impleaded with ALFRED G. REEVES and Others, Individually and as Copartners Doing Business under the Firm Name and Style of REEVES & TODD, Appellants.

First Department, June 6, 1924.

Attorney and client — action against firm of attorneys to recover damages based on defalcation of member of firm — firm acted as attorneys for executors and trustees under will — members of firm, with knowledge of defalcation, failed to inform clients but defaulting member withdrew and continued in part to represent clients — firm also represented clients and when informed of like defalcation in 1913 failed to notify clients but severed their relations as attorneys — it was duty of attorneys to notify clients — action is one based on contract obligation or liability, express or implied, within Code of Civil Procedure, § 382 (now Civ. Prac. Act, § 48) and six-year Statute of Limitations applies — complaint does not set forth action for malpractice and two-year limitation fixed by Code of Civil Procedure, § 384 (now Civ. Prac. Act, § 50), is not applicable — Code of Civil Procedure, § 407 (now Civ. Prac. Act, § 14), is not applicable.

In an action at law to recover from a firm of attorneys based on the defalcation of one of its members, it appeared that the firm represented the executors and trustees under a will and that the defaulting member had charge of the investments for the estate; that the members of the firm were informed in 1911 of the defalcation but did not disclose that fact to their clients; that at that time the defaulting member withdrew from the firm and the clients were informed of his withdrawal and requested to indicate whether he would act as their attorney in the future or whether the business would be retained by the firm but did not inform the clients of the defalcation; that the firm continued to represent the clients generally while the defaulting member retained control of the investments and in 1913 the firm was again informed of further defalcations but failed to notify the clients and then severed their relations with the clients who did not learn of the acts of the defaulting attorney until 1917.

*Held,* that it was the duty of the attorneys by virtue of their employment to disclose to their clients the fact of the defalcation, and it was a legal right of the clients to have such disclosures made to them, and the failure to make the disclosure constituted a wrongful act giving rise to a cause of action.

The action, which was not commenced until May 2, 1922, is one based upon a contract obligation or liability, express or implied, within the meaning of section 382 of the Code of Civil Procedure as it existed in 1911 and 1913 (now Civ. Prac. Act, § 48), and the six-year Statute of Limitations there prescribed applies and, therefore, since the last defalcation which it became the duty of the attorneys to disclose occurred in 1913, the action is barred.

The complaint does not set forth an action for malpractice and, therefore, the two-year period of limitation fixed by section 384 of the Code of Civil Procedure (now Civ. Prac. Act, § 50) is not applicable.

Section 407 of the Code of Civil Procedure (now Civ. Prac. Act, § 14), which provides that where an injury results from the act or omission of a deputy or agent, the time within which an action to recover damages by reason thereof must be commenced by the principal against the deputy or agent, must be computed from the time when a judgment against the principal for the act or omission is first recovered by the aggrieved person, is not applicable, since there was no violation by the attorneys of an obligation which their clients directly and legally owed to third persons, but a violation of an obligation which the attorneys directly and legally owed to their clients.

APPEAL by the defendants, Alfred G. Reeves and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 16th day of November, 1922, denying their motion for judgment dismissing the complaint under subdivisions 5 and 6 of rule 107 of the Rules of Civil Practice after the plaintiff had presented affidavits under rule 108 of the Rules of Civil Practice.

*Reeves & Todd* [*Frederick Collin* of counsel], for the appellants.

*Rothwell, Harper & Matthews* [*Vincent H. Rothwell* of counsel; *George Gordon Battle* and *Harold Harper* with him on the brief], for the respondent.

DOWLING, J.:

This is an action at law which was commenced on May 2, 1922, to recover from the appellants the sum of $27,167.88, the amount paid by plaintiff upon a decree against him as sole surviving executor in the action brought against him and others by Alva E. Belmont, individually and as one of the sole surviving trustees under the last will and testament of Armide Vogel Smith, deceased, in the Supreme Court, New York county, which said decree was entered October 27, 1921.

The basis of the present action is the failure of appellants, as attorneys of plaintiff's testatrix and of her coexecutors and trustees, to inform her of the facts hereinafter set forth as to the theft, dishonesty and criminality of their partner Herbert Reeves, which information, if communicated to her, would have preserved her estate from the liability upon which said decree was founded.

The complaint alleges that on the 7th of March, 1906, Miss Armide Vogel Smith made her last will and testament by which she appointed John Prentice Kellogg, Ellen P. Kellogg and Alva E. Belmont her executors and trustees. She died thereafter, the will was probated and letters testamentary were issued to the said executors named therein. The law firm of Reeves, Todd & Swain consisted at that time of Alfred G. Reeves, Harold Swain, Ambrose G. Todd, Herbert Reeves and Alexander S. Rowland, and so continued until 1911, when Harold Swain withdrew. That

firm appeared as attorneys and propounded the will of Miss Smith and after the issuance of letters they continued to act as attorneys for the executors and trustees. In the course of its retainer the firm rendered professional services in the administration of the estate, prepared the final accounting of the executors and assisted in the execution of the trusts created by the will. In administering the affairs of the estate Reeves, Todd & Swain undertook to invest and reinvest the funds and property of the estate in mortgages, accepted custody of its funds and property and assisted in the making of such investments as they and the trustees suggested or in such invest-ments as the firm advised. The plaintiff's testatrix and her cotrustees retained the law firm aforesaid relying upon the professional integrity, skill and ability of its members and believing in their high character and in reliance upon their legal and professional obligations to deal with said testatrix and her affairs in the utmost good faith, with implicit honesty for her interest and the interest of the cotrustees; and relying upon the foregoing, said testatrix delegated to Reeves, Todd & Swain duties in the administration of the affairs and trusts of the estate accordingly. Herbert Reeves in the course of his professional employment and in the business of said firm, had under his supervision, control and management the affairs of this estate, including the rendition of legal services, handling of money, property, deeds, mortgages, securities and other muniments of title of the estate, when they were in the custody of Reeves, Todd & Swain. Between the years 1909 and 1911 Herbert Reeves stole, misapplied and converted to his own use funds and property of the estate of the value of $25,000 and in 1911 the firm and each member thereof were informed of and well knew of the larcenies and conversions and each and all of them aided and abetted in concealing from said testatrix the knowledge of the larcenies and conversions. The concealment continued, and no one of the defendants individually or as copartners disclosed the fact of these larcenies to plaintiff or said testatrix who, until early in the year 1917, remained wholly ignorant of them. As a result of the larcenies, Herbert Reeves was requested to and did withdraw from the firm in May of 1911. However, before the withdrawal of Herbert Reeves, the firm of Reeves, Todd & Swain sent to said testatrix a letter announcing that Herbert Reeves was withdrawing therefrom, and requested plaintiff's testatrix to indicate her pleasure as to whether or not the legal business of the estate should be continued by Herbert Reeves or handled by Reeves & Todd, to be organized on May 1, 1911, after the withdrawal of Herbert Reeves. Plaintiff's testatrix, relying on the character, standing and learning of the defendants and wholly ignorant of the larcenies of Herbert Reeves, joined with her

cotrustees in indicating their pleasure that the member of the firm most familiar with the estate, to wit, Herbert Reeves, should continue to act as attorney and counsel. No member of the firm of Reeves, Todd & Swain, or any employee thereof, informed plaintiff's testatrix of the larcenies of Herbert Reeves or plaintiff's testatrix would not have agreed to his retainer as attorney for the trustees. The defendants, and each of them, knowing that Herbert Reeves had already stolen and that he had committed other acts of a criminal nature in the administration of the estate, aided, abetted and assisted him in concealing the larcenies and other criminal acts and without disclosing his wrongdoing, permitted him to take from their office copies of the office records and property and affairs of the estate and continue to act for plaintiff's testatrix and for plaintiff and their cotrustees in that relationship of trust and confidence until 1917.

The firm of Reeves & Todd was organized on May 1, 1911. It consisted of Alfred G. Reeves, Ambrose G. Todd and Alexander S. Rowland. This successor firm kept the original mortgage sheets of the estate in their custody, and thereafter the signature of extension agreements, mortgages and other papers requiring signatures by the three trustees were forwarded by Reeves & Todd to plaintiff's testatrix and John Prentice Kellogg, their signatures thus procured and Reeves & Todd returned them to Herbert Reeves, and Reeves & Todd continued their professional activities in respect of the estate under an authority to exercise a general supervision over the affairs of the estate which was in the hands of Herbert Reeves. Thereafter and while Reeves & Todd stood in this relationship and without the knowledge of plaintiff's testatrix or plaintiff, Herbert Reeves continued to steal from, misappropriate and convert to his own use the funds and property of the estate until 1917.

In 1913 Herbert Reeves confessed to Alfred G. Reeves, and he in turn informed his partners Todd and Rowland of further larcenies, misappropriations and conversions of the funds of the estate, and said Reeves and Todd and Rowland failed to disclose the facts of said larcenies and confession to plaintiff's testatrix and aided and abetted Herbert Reeves in concealing the same. Between 1911 and 1913 and thereafter Alfred G. Reeves, Todd and Rowland having knowledge of the wrongdoing, failed to disclose it to the trustees and enabled Herbert Reeves by their misconduct to continue further to loot, steal and misapply the funds and property of the estate.

Between 1909 and 1917 Herbert Reeves stole and converted $76,983.81 of the estate and during this time Reeves, Todd and Swain and Reeves and Todd had actual knowledge and notice

of the wrongdoing and aided in the concealment of it from the trustees. Early in 1917 Herbert Reeves confessed to Alva E. Belmont, one of the trustees, that he had stolen large sums from the estate.

Mrs. Kellogg died on January 11, 1916, leaving a last will and testament duly admitted to probate in the State of New Jersey, whereof Charles Martin Camp and John Prentice Kellogg were executors and ancillary letters testamentary were duly issued to them by the Surrogate's Court of New York county.

In October of 1917 Alva E. Belmont, as one of the surviving trustees, commenced an action in equity in the Supreme Court, New York county, against John Prentice Kellogg and Charles Martin Camp, this plaintiff, as executors of Ellen P. Kellogg, deceased, John Prentice Kellogg, individually, and the beneficiaries under the will of Armide Vogel Smith deceased, for the purpose of obtaining a judgment and decree surrendering up and canceling a certain paper and writing therein referred to and for the purpose of rendering an accounting of the affairs of the estate. In February, 1921, the Hon. E. Henry Lacombe, the referee, filed his decision on which the said paper and writing was decreed to be surrendered up and canceled and judgment for the amount of the defalcations of Herbert Reeves was awarded against the plaintiff, the sole surviving trustee, Alva E. Belmont, and Ethel P. Kellogg, executrix of John Prentice Kellogg, in the amount of $76,983.81. October 27, 1921, a decree of the Supreme Court was entered thereupon which with interest and costs gave judgment for $121,046.90. It was not until January 30, 1921, that the extent of the larcenies, misapplications and conversions of Herbert Reeves were definitely and accurately known to the plaintiff and judicially determined and judgment entered accordingly. After the entry of judgment plaintiff was notified that execution would be issued if the same was not paid and plaintiff refunded to the estate $24,767.88 and paid in counsel fees $2,400 in addition thereto.

The motion made by appellants was for judgment dismissing the complaint upon the grounds that (1) the cause of action had not accrued within the time limited by law for the commencement of an action thereon, and (2) there is an existing final judgment or decree of a court of competent jurisdiction rendered on the merits determining the same cause of action between the parties.

Upon this motion it was made to appear that in the action of *Belmont* v. *Kellogg et al.,* referred to in the complaint herein, the principal sum of $76,983 lost to the Smith estate by and through the negligence of the testatrix and her cotrustees was made up of the following items:

| | | |
|---|---:|---:|
| September 21, 1911...................... | $1,000 | 00 |
| February 8, 1912...................... | 14,000 | 00 |
| May 9, 1912...................... | 250 | 00 |
| December 2, 1912...................... | 6,000 | 00 |
| December 2, 1912...................... | 2,000 | 00 |
| December 14, 1912...................... | 2,000 | 00 |
| February 1, 2 and 5, 1913................ | 11,250 | 00 |
| February 17, 1913...................... | 250 | 00 |
| May, 1913...................... | 4,248 | 50 |
| May 13, 1913...................... | 2,000 | 00 |
| March 10, 1915...................... | 8,113 | 81 |
| July 11, 1915...................... | 250 | 00 |
| October 21, 1915...................... | 15,000 | 00 |
| January 17, 1916...................... | 10,371 | 50 |
| September 5, 1916...................... | 250 | 00 |
| | $76,983 | 81 |

Each loss was constituted of a defalcation or misappropriation of the sum of the loss made at its date by Herbert Reeves, while the sole attorney and counsel of the trustees.

It is quite clear from an examination of the complaint herein that the cause of action therein sought to be set forth was based on appellants' failure to disclose to testatrix and her cotrustees of the Smith estate, either prior to May 5, 1911, or to February 1, 1913, their knowledge of the defalcations of Herbert Reeves.

The former date is that prior to which Reeves and Todd and Swain sent a letter to their clients, including the trustees of the Smith estate, announcing the withdrawal of Herbert Reeves from the firm and requesting their clients to indicate their pleasure as to the person who was in future to represent them.

The latter date is that on which, as found by the referee herein, the firm of Reeves & Todd wrote to Herbert Reeves canceling their former letter to him of July 15, 1911, wherein they stated that the firm was to have a general oversight of matters on behalf of the Kelloggs and informing him that thereafter all papers requiring the signatures of the Kelloggs should be sent to them direct, leaving the firm entirely out of the matter. Of this letter a copy was sent on the same day to J. Prentice Kellogg, one of the trustees of the Smith estate.

There can be no doubt that on both of these dates, May 5, 1911, and February 1, 1913, and down to the latter date inclusive, it was the duty of the appropriate appellants, by virtue of their employ-

ment by the trustees as their attorneys, to disclose to the trustees who were, on either of said dates, their clients, that Herbert Reeves had been guilty of misappropriations and of a general dishonest course in his handling of the affairs of the estate. It was the legal right of the plaintiff's testatrix to have such disclosures made and it was the legal duty of the defendants to make them. That duty was violated when appellants kept silence as to the criminality of Herbert Reeves in his dealings with the estate. The trustees' right to have a disclosure made to them, which it was appellants' duty to make, when disregarded by appellants, constituted a wrongful act, imparting damages, and would give rise to a cause of action, whether such damages were substantial or nominal only.

Under any fair construction of the complaint, taken in connection with the findings of the referee in *Belmont* v. *Kellogg,* and the affidavits upon this motion, the latest date upon which appellants acted as attorneys for the trustees of the Smith estate, was February 1, 1913. There is an allegation in the complaint that " in the year 1913 " the firm of Reeves & Todd were acting as attorneys for the estate, but there is no suggestion of any proof that such relationship continued in the year 1913 after February first, when Reeves & Todd ended all their connections with Herbert Reeves, so far as the Smith estate was concerned.

There is no allegation of any wrongdoing by appellants after 1913, nor any proof offered thereof by affidavit upon this motion. Upon this record the Smith estate was intact when Herbert Reeves withdrew from the firm and took sole charge of it on May 31, 1911, and there is no charge that appellants in any way profited by his misconduct thereafter. The sole charge against appellants is their violation of their duty to their clients of a full disclosure of Herbert Reeves' crimes, and that duty ceased on February 1, 1913.

This action was not commenced until May 2, 1922. I am of the opinion that the cause of action set forth herein is based upon a " contract obligation or liability, express or implied," and that the six years' period of limitation fixed by section 382 of the Code of Civil Procedure (as it existed in 1911 and 1913)\* applied.

I do not believe that the complaint sets forth an action for malpractice and, therefore, that the two-year period of limitation fixed by section 384 of the Code of Civil Procedure† is not applicable.

Nor do I find any support for the contention that section 407 of the Code of Civil Procedure (now section 14 of the Civil Practice

---

\* See Laws of 1876, chap. 448, § 382, as amd. by Laws of 1877, chaps. 416, 422, and Laws of 1894, chap. 307. Since amd. by Laws of 1920, chap. 480: now Civ. Prac. Act, § 48.— [REP.

† Now Civ. Prac. Act, § 50.— [REP.

Act) applied, which provided: " Where an injury results from the act or omission of a deputy or agent, the time, within which an action to recover damages by reason thereof, must be commenced by the principal, against the deputy or agent, must be computed from the time, when a judgment against the principal, for the act or omission, is first recovered by the aggrieved person; and a subsequent reversal or setting aside of the judgment does not extend the time."

As was pointed out by Chief Judge HISCOCK, in discussing this section in *Town of Greenburgh* v. *Coyne* (236 N. Y. 296): " We think that the difference between the acts or omissions of the agent relied upon as a basis for this action and those which are really contemplated by the statute is sufficiently illustrated by the case of *President, etc., of Bank of Utica* v. *Childs* (6 Cow. 238) and which is said to have led to the enactment of this statutory provision.

" In that case a notary who was the agent and employee of the bank negligently failed to charge a prior indorser on a note by giving notice of non-payment and as the result of which subsequent indorsers were compelled to pay the note. The latter then brought action against the bank for the damages caused by the neglectful omission of its agent and recovered judgment and the bank then brought suit against the notary but was defeated on the ground that its cause of action accrued when its agent negligently failed to protest the note rather than at the time when the parties who were directly injured by such failure recovered judgment against it for their damages. In that case the agent by his omission violated the obligations which his principal directly and legally owed to third parties and those third parties were directly and legally injured and aggrieved by such omission. That is the character of act or omission which we believe is contemplated by this statute and the difference between it and the dereliction of the commissioners in the sale of the bonds in respect of third parties seems to us quite plain."

In the case now before us for consideration, there was no violation by appellants of an obligation which their principals directly and legally owed to third parties, the latter being directly and legally injured and aggrieved by such omission. Here there was a violation by appellants of an obligation which they directly and legally owed to their principals, and for that they at once became liable, and against that liability the six years' Statute of Limitations has run.

This conclusion renders unnecessary the consideration of what effect, if any, the final judgment in *Belmont* v. *Kellogg* would have upon plaintiff's right to recover if his cause of action were held to

be one for indemnity. That judgment was based upon findings by the referee of negligence upon the part of all the trustees equally but for which negligence " it would have become manifest before September 1, 1911, that Herbert Reeves was deceiving the active trustee and the loss to the estate would have been avoided." But as we do not view the complaint as seeking to recover upon the theory of indemnity, it is not necessary to consider how tenable such a theory would be under the facts in this case.

The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements to appellants, and the motion for judgment dismissing the complaint granted on the ground that the cause of action set forth therein is barred by the Statute of Limitations, with ten dollars costs.

CLARKE, P. J., FINCH, MCAVOY and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.